UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**CV 14    5491**

---------------------------------------------------------------X
TYRONE WIGGINS,

            Plaintiff,

-against-

THE CITY OF NEW YORK, DETECTIVE JAY
WOLSKY (N.Y.P.D.) SHIELD #4400, LIEUTENANT
SEAMUS MCHUGH (N.Y.P.D.), SERGEANT
MICHAEL BERGAMO (N.Y.P.D.) SHIELD #190, AND
OFFICERS JOHN DOE #1-10 (THE NAME JOHN
DOE BEING FICTICIOUS, AS THE TRUE
NAME(S) IS/ARE PRESENTLY UNKNOWN),

            Defendants.
---------------------------------------------------------------X

Index No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

AZRACK, M.J.

The Plaintiff, complaining by his attorney(s), THE LAW OFFICE OF JEFFREY CHABROWE, P.C., respectfully shows to this Court and alleges:

## INTRODUCTION

1. This is an action to vindicate the rights of Tyron Wiggins, a Brooklyn man whose mere presence in a barbershop on the day a crime was committed resulted in his false arrest, and 18 months of wrongful incarceration.

2. The individual Defendants in this case, all whom worked out of the 77th Precinct, are now being sued for their respective roles in the violation of Mr. Wiggins' rights.

3. The City of New York is being sued for failing to properly train, supervise, and/or discipline New York City police officers, and for continuing to tolerate and defend a widely publicized departmental culture, particularly in Kings County and the 77th Precinct, of willful indifference toward the rights of citizens.

1

## THE PARTIES

4. At all times relevant to this litigation, Plaintiff TYRONE WIGGINS was a resident of Brooklyn, NY.

5. Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and that at all times relevant all Defendant officers were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

6. Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK, its agents, servants, and employees, operated, maintained and controlled the New York City Police Department, including all the police officers thereof.

7. Upon information and belief, at all times hereinafter mentioned, Defendants Detective JAY WOLSKY, Lieutenant SEAMUS MCHUGH, Sergeant MICHAEL BERGAMO, and OFFICERS JOHN DOE #1-10 were employed by the Defendant CITY OF NEW YORK, as members of its police department.

8. Upon information and belief, at all times hereinafter mentioned, all Defendant Police Officers, be they known or unknown, worked out of the 77th precinct in Brooklyn, New York.

9. The New York City Police Department is a local governmental agency, duly formed and operating under and by virtue of the Laws and Constitution of the State of New York and the police chief of the New York City Police Department is responsible for the policies, practices, and customs of the New York City Police Department as well as the hiring, screening, training,

supervising, controlling and disciplining of its police officers and civilian employees, and is the final decision maker for that agency.

10. This action arises under the United States Constitution, particularly under provisions of the Fourth and Fourteenth Amendments of the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983, the rights guaranteed by the Constitution, and the laws of the State of New York.

11. Individual Defendants in this action are being sued in both their individual and official capacities.

## STATEMENT OF FACTS

12. On the afternoon of September 21, 2011, Plaintiff Tyrone Wiggins visited a barbershop located at 558 Ralph Avenue, Brooklyn, NY; Mr. Wiggins was wearing a white t-shirt and blue jeans.

13. Two days later, on September 23, 2011, Mr. Wiggins was arrested at his mother's home, and accused of shooting Jarmel Johnson (who survived) at the same barbershop, on the same day Mr. Wiggins had been there, despite a total absence of evidence to support the allegation.

14. According to initial police reports, Mr. Wiggins was arrested pursuant to a description of the shooter provided by Jarmel Johnson stating that a man in a "dark hoody" [sic] entered the barbershop, and without speaking, and for no apparent reason, shot him three times.

15. No gun or other ballistic evidence was ever recovered by police.

16. Police initially characterized Jarmel Johnson as "very uncooperative."

17. Upon information and belief, Jarmel Johnson went to the hospital himself, and made no effort to call 911 or otherwise report the crime, giving rise to an inference that his injuries may have somehow resulted from his own criminal activity.

18. Under the circumstances, no reasonable police officer would have relied on the uncorroborated word of Jarmel Johnson.

19. Thus, police had no discernable leads with which to investigate the matter.

20. However, upon information and belief, police were able to recover surveillance video of patrons exiting the barbershop, which included Mr. Wiggins, among many others that day, exiting the barbershop.

21. The video showed Mr. Wiggins wearing a white t-shirt (not a dark hoodie), proceeding normally, and in no way acting suspicious.

22. Police would later allege that an "anonymous tip" provided them with a nickname and address for Tyrone Wiggins, though the substance of the alleged tip was never specified, the alleged source of the tip was never identified, and his/her veracity was never subject to cross-examination or scrutiny.

23. In one document, Defendant Wolsky indicated that an "eyewitness" to the shooting (presumably Jarmel Johnson) made a "confirmatory identification" of Mr. Wiggins based on a photograph, though upon information and belief, Jarmel Johnson has consistently denied that.

24. Defendant Wolsky also told prosecutors that Mr. Wiggins "fled" from his mother's house as he tried to arrest him, though paperwork generated by Defendant McHugh starkly contradicted that, stating (as Mr. Wiggins has maintained) that he was arrested "without incident."

4

25. Still another piece of police paperwork seems to indicate Mr. Wiggins was identified as the shooter in a police line-up, though Mr. Wiggins never participated in any such line-up at any point in the investigation.

26. All of the substantive police paperwork that led to the wrongful arrest and prosecution was drafted, supervised, or otherwise approved by Defendants Wolsky, McHugh, and Bergamo.

27. The numerous and apparent inconsistencies contained in the officers' paperwork gives rise to an inference that the Defendant officers intentionally fabricated evidence against and Mr. Wiggins in an effort to secure his indictment and conviction.

28. It also gives rise to an inference that police manufactured a case and brought legal process against Mr. Wiggins because they suspected, at the very least, they could avoid the embarrassment of being unable to solve the crime, and/or leverage the false charges in an effort to coerce Mr. Wiggins into providing information that would lead to the arrest of the real shooter.

29. Wiggins' case was summarily dismissed on March 7, 2013 after prosecutors were forced to concede they could not sustain a case against a backdrop of such glaring and nonsensical inconsistencies.

30. Unfortunately, by that time, Mr. Wiggins had been incarcerated for nearly 18 months.

### AS AND FOR THE FIRST CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF AGAINST THE CITY OF NEW YORK AND ALL NAMED NYPD DEFENDANTS

**Violation of Constitutional Rights Under Color of State Law**
**-False Arrest/Imprisonment-**

31. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 30.

5

32. The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures by government officials, and prohibit law enforcement officers from arresting and detaining individuals in the absence of appropriate authorization. It also precludes police officers from conducting arrests in the absence of probable cause to believe that a crime has been committed.

33. The actions of the Defendants as stated herein violated Tyrone Wiggins' rights under Federal law.

34. It is clear the Defendants lacked any objectively reasonable basis to support a legitimate probable cause arrest.

35. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of Tyron Wiggins.

36. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

37. As a direct and proximate result of the unconscionable acts described above, Plaintiff Tyrone Wiggins has been substantially injured.

### AS AND FOR THE SECOND CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF AGAINST THE CITY OF NEW YORK AND ALL NAMED NYPD DEFENDANTS

**Violation of Constitutional Rights Under Color of State Law -Malicious Prosecution-**

38. Plaintiffs incorporate by reference and reallege each and every allegation stated in Paragraphs 1 through 37.

39. The Fourth Amendment of the United States Constitution protects citizens from overzealous and malicious prosecution by government officials without probable cause.

40. Tyron Wiggins was prosecuted, without probable cause, relative to the September 21, 2011 shooting as set forth herein.

41. Said charges resulted in a loss of liberty for Mr. Wiggins, as he was incarcerated for some 18 months as a result of the aforedescribed false and improper charges, and incurred substantial financial and emotional damages as a direct result.

42. Mr. Wiggins' criminal proceeding was terminated in favor of Mr. Wiggins, as the charges in question were dismissed outright.

43. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of Tyrone Wiggins.

44. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

45. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Tyrone Wiggins has been substantially injured.

## AS AND FOR THE THIRD CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF AGAINST THE CITY OF NEW YORK AND ALL NAMED NYPD DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law -Malicious Abuse of Process-

46. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 45.

47. Defendants issued legal process against the Plaintiff.

48. Defendants issued legal process against the Plaintiff to obtain a collateral objective outside the legitimate ends of the legal process; namely, to avoid the disgrace of an unsolved

7

crime and/or to coerce Mr. Wiggins into providing information that might lead to the arrest of the person who shot Jarmel Johnson.

49. Defendants acted with intent to do harm to the Plaintiff, violating the rights of the Plaintiff, without excuse or justification.

50. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

51. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Tyrone Wiggins has been substantially injured.

## AS AND FOR THE FOURTH CAUSE OF ACTION ON BEHALF OF THE PALINTIFF AGAINST THE CITY OF NEW YORK AND ALL NAMED NYPD DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law -Denial of Constitutional Right to Fair Trial Due to Fabrication of Evidence-

52. Plaintiff's incorporate by reference and reallege each and every allegation stated in Paragraphs 1 through 51.

53. Defendants created false evidence against Plaintiff Tyrone Wiggins.

54. Defendants forwarded false evidence and false information to prosecutors in the Kings County District Attorney's office.

55. Defendants misled the grand jury, the judge and the prosecutors by creating false evidence against Plaintiff Tyrone Wiggins.

56. In creating false evidence against Plaintiff Tyrone Wiggins, in forwarding false evidence and information to prosecutors, and in providing false and misleading testimony, Defendants violated Plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

8

57. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

58. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Tyrone Wiggins has been irreparably injured.

### AS AND FOR THE FIFTH CAUSE OF ACTION ON BEHALF OF THE PALINTIFF AGAINST THE CITY OF NEW YORK AND ALL NAMED NYPD DEFENDANTS

#### Violation of Constitutional Rights Under Color of State Law -Conspiracy to Violate Plaintiffs' Civil Rights-

59. Plaintiffs incorporate by reference and reallege each and every allegation stated in Paragraphs 1 through 58.

60. Defendant officers, acting under color of state law in both their individual capacities and as agents for the City of New York, conspired together, reached a mutual understanding, and acted in concert to undertake a course of conduct violative of Plaintiff's civil rights by agreeing to intentionally ignore evidence or inquire further and/or fabricate evidence, and by intentionally arresting and prosecuting the Plaintiff absent probable cause.

61. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

62. Defendants' actions were motivated by bad faith, malice, and/or willful indifference.

63. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Tyrone Wiggins has been substantially injured.

9

## AS AND FOR THE SIXTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST
## THE CITY OF NEW YORK AND ALL NAMED NYPD DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law
### -Failure to Intercede-

64. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 63.

65. The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures by government officials without the appropriate authorization.

66. The actions of Defendant officers detailed above violated the Plaintiff's rights under the United States Constitution. It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

67. Defendants' actions were motivated by bad faith and malice, and/or deliberate indifference to the rights of the Plaintiff.

68. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

69. As a direct and proximate result of the unconstitutional acts described above, the Plaintiff has been substantially injured.

## AS AND FOR THE SEVENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF AGAINST THE CITY OF NEW YORK

*- Implementation of Municipal Policies, Practices, and Customs that Directly Violate Constitutional Rights, Failure to Implement Municipal Policies to Avoid Constitutional Deprivations and Failure to Train and Supervise Employees Under Color of State Law-*

70. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 69.

71. Upon information and belief, Defendant Lieutenant McHugh, Defendant Sergeant Bergamo, Officer(s) "Doe," supervised, directed, and otherwise sanctioned the wrongful conduct of Defendant Wolsky and other "John Doe" officers.

72. Upon information and belief, Defendant City of New York, Lieutenant McHugh, Sergeant Bergamo, and Officer(s) "Doe," were supervisors and final decision makers, and as a matter of policy, practice, and custom, have acted with a callous, reckless and deliberate indifference to the Plaintiff's constitutional rights and laws of the United States, in that they failed to adequately discipline, train, supervise or otherwise direct police officers concerning the rights of citizens, including not making false arrests, ignoring material evidence, and prosecuting innocent individuals.

73. In the alternative, and upon information and belief, Defendants instituted policies addressing the topics listed above, but through deliberate indifference to the same culture of gross negligence, carelessness, and malice, and/or improperly pressuring officers to meet certain arrest quotas regardless of whether probable cause was present, demonstrated a willful indifference to the constitutional rights of the Plaintiff. The policies, procedures, customs and practices of the Defendants violated the Constitutional rights of the Plaintiff under the Fourth Amendment of the United States Constitution.

74. It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the clearly established constitutional rights of citizens from infringement by other law enforcement officers in their presence.

75. At all times relevant herein, the right to be free from deprivations of liberty interests caused by unjustifiable criminal charges and procedures were clearly established constitutional rights that a reasonable person would have known.

76. Upon information and belief, over a span of years, the 77th Precinct has repeatedly been mentioned as a site for police misconduct over a span of years[1], including the time period involving the allegations against the Plaintiff.

77. Upon information and belief, several of the named Defendants in the present case have been sued, in some cases repeatedly, pursuant to allegations of official misconduct, yet none have ever been subject to appropriate disciplinary action.

78. In or about July of 2013, the Kings County District Attorney's Office announced the formation of an unprecedented panel[2] of former prosecutors, professors, and retired judges to review as many as 50 convictions involving a former Kings County detective, Louis Scarella, who is alleged to have regularly sought false statements from witnesses, and whose work appears to have sent an array of innocent citizens to prison.

---

[1] See Crack in the Shield, the Fall of the Seven-Seven, New York Magazine, December 8, 1986, available at http://nymag.com/news/features/50431/; Cops at Brooklyn's Crime-Ridden 77th Precinct Told to Meet Quotas for Moving Violations, Memos Say, New York Daily News, November 8, 2010, available at http://www.nydailynews.com/new-york/cops-brooklyn-crime-ridden-77th-precinct-told-meet-quotas-moving-violations-memos-article-1.452621#v6JRyglzmcuWPVI0.97; Brooklyn's 77th Precinct Probed for Manipulating Crime Statistics, New York Daily News, February 17, 2011, available at http://www.nydailynews.com/new-york/brooklyn-77th-precinct-probed-manipulating-crime-statistics-article-1.139628#BcSwmiHq0vECFhPm.97.

[2] Panel Named to Review Trial Convictions Involving Retired Brooklyn Detective, July 2, 2013, Brooklyn Daily Eagle, available at http://www.brooklyneagle.com/articles/panel-named-review-trial-convictions-involving-retired-brooklyn-detective-2013-07-02-180000

79. Long time Kings County District Attorney Charles Hynes was recently voted out of office amidst widespread[3] allegations of misconduct.

80. Upon information and belief, former Kings County Detective, Michael Race, whose work has also been linked to the conviction of innocents, has been quoted in press[4] accounts as stating that of the 750 murder investigations he ran, only one was "done the correct way, A to Z."

81. In 2011, some two-dozen Bronx-based NYPD officers were subject to criminal charges[5] involving allegations of "fixing" tickets for friends and relatives.

82. Upon information and belief, in July of 2012, after discovering that many people arrested on charges of criminal trespass at Bronx County housing projects were innocent, even though police officers had provided written statements to the contrary, the Bronx district attorney's office quietly adopted a policy[6] of no longer prosecuting people who were stopped at public housing projects and arrested for trespassing, unless the arresting officer was interviewed to ensure that the arrest was warranted.

83. On February 2, 2012, officers from the 47th Precinct in the Bronx wrongfully entered the home of 18 year old Ramarley Graham and shot the unarmed youth to death in his bathroom as he was allegedly trying to flush a small quantity of marijuana down the toilet.

---

[3] See e.g., Charles Hynes, Scandal-Plagued District Attorney, Faces Verdict at the Polls, ProPublica, September 6, 2013, available at http://www.huffingtonpost.com/2013/09/06/charles-hynes-brooklyn-district-attorney-election_n_3881395.html; Brooklyn DA Charles Hynes in the Hot Seat for Protecting Prosecutor Who Imprisoned Innocent Man, New York Daily News, November 16, 2012, available at http://www.nydailynews.com/new-york/b-klyn-da-charles-hynes-hot-seat-wrongful-conviction-article-1.1203342; Ex-Brooklyn Prosecutor Charles J. Hynes Accused of Misues of Funds, New York Times, available at http://www.nytimes.com/2014/06/03/nyregion/charles-hynes-brooklyn-district-attorney-inquiry.html.

[4] See e.g., In a 1992 Murder, Evidence of Flawed Justice, July 4, 2013, New York Times, available at http://www.nytimes.com/2013/07/05/nyregion/in-a-1992-murder-evidence-of-flawed-justice.html

[5] See Big Inquiry Into Ticket-Fixing in New York, New York Times, April 17, 2011, available at http://www.nytimes.com/2011/04/18/nyregion/ticket-fixing-by-police-investigated-in-new-york.html?_r=0&adxnnl=1&adxnnlx=1400166713-OlwMCl6A6jnLyJC0ODdeoQ

[6] Prosecutor Deals Blow to Stop and Frisk Tactic, New York Times, September 25, 2012, available at http://www.nytimes.com/2012/09/26/nyregion/in-the-bronx-resistance-to-prosecuting-stop-and-frisk-arrests.html?pagewanted=all

84. On June 27, 2011, former Bronx-based N.Y.P.D police officer and later Sergeant William Eiseman pled guilty to one count of felony first-degree perjury and three counts of official misconduct stemming from allegations that he personally filed false instruments, intentionally testified falsely, and encouraged his subordinates to act in kind.

85. In August of 2013, federal Judge Shira A. Sheindlin of the Southern District of New York found[7] that the New York City Police Department resorted to a "policy of indirect racial profiling" as officers routinely stopped "blacks and Hispanics who would not have been stopped if they were white." The Plaintiff in this case is African American.

86. Mayor Bill De Blasio ran his winning campaign[8] in substantial part on the need for "much needed reforms," with the NYPD, calling for "new leadership," the appointment of an "inspector general," to oversee the NYPD, and the introduction of a "strong racial profiling bill."

87. The nature, regularity, and scale of such revelations, and the extraordinary efforts being undertaken in response to a highly publicized slew of wrongful convictions, gives rise to an inference of systemic incompetence and corruption on the part of the New York City Police Department, as such a widespread legacy of injustices cannot plausibly be laid at the feet of a few rogue officers.

88. Defendant(s) also, upon information and belief, demonstrated deliberate indifference to the rights of those arrested in the City of New York by failing to adequately hire, screen, train, and supervise officers in Kings County and the 77th Precinct.

---

[7] Judge Rejects New York's Stop and Frisk Policy, August 12, 2013, New York Times, available at http://www.nytimes.com/2013/08/13/nyregion/stop-and-frisk-practice-violated-rights-judge-rules.html?pagewanted=all

[8] See Bill DeBlasio campaign website @ http://www.billdeblasio.com/issues/crime-fighting-public-safety

14

89. The policies, procedures, customs and practices of the above-referenced Defendants violated the Constitutional rights of the Plaintiff under the Fourth, and Fourteenth Amendments of the United States Constitution.

90. This conduct on the part of Defendants also represents a violation of 42 U.S.C § 1983, given that said actions were undertaken under color of state law.

91. Upon information and belief, none of the Defendants named herein were disciplined in for their actions relative to the Plaintiff.

92. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Tyrone Wiggins has been substantially injured.

## DEMAND FOR PUNITIVE DAMAGES

93. The actions of Defendants described herein were extreme and outrageous, and shock the conscious of a reasonable person. Consequently, an award of punitive damages is appropriate to punish the Defendants for their cruel and uncivilized conduct. The Plaintiffs do not seek punitive damages against the City of New York.

## DEMAND FOR TRIAL BY JURY

94. The Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff Tyrone Wiggins requests that this Honorable Court grant him the following relief:

A. A judgment in favor of Plaintiff against all Defendants for compensatory damages in an amount to be determined by a properly charged jury.

15

B. A judgment in favor of Plaintiff against all Defendants but the City of New York for punitive damages in an amount to be determined by a properly charged jury;

C. A monetary award for attorneys fees and costs of this action, pursuant to 42 U.S.C. § 1988;

D. Any other relief this Court finds to be just, proper, and equitable.

Dated: New York, New York
September __, 2014

Respectfully Submitted By:

Andrew L. Hoffman, Esq. (AH9502)
Of Counsel,
Law Office of Jeffrey Chabrowe, P.C.
*Attorney(s) for the Plaintiff*
261 Madison Avenue, 12 Floor
New York, NY 10016
T: (212) 736-3935
E: ahoffman@andrewhoffmanlaw.com

16